Moore *v.* Des Arts.

---

## MOORE *vs.* DES ARTS.

The defendant imported into New-York a quantity of spelter, upon which the collector claimed and received a duty of 20 per cent ad valorem; which spelter was not a dutiable article, being included in the class of articles exempted from the payment of duties, under a different name. He subsequently sold such spelter to the complainant, at *long price*, which by custom was a sale of the vendor's right

Moore *v.* Des Arts.

of debenture, where such right existed. Afterwards, while the spelter remained in the hands of the purchaser, and in a situation in which it might have been exported with the benefit of drawback had it been a dutiable article, the secretary of the treasury decided that spelter was exempt from duty; and directed all duties which had been previously received, on the importation of that article, to be refunded to the importers; in pursuance of which decision and direction the defendant received back from the collector the 20 per cent duty, which had been paid by him, upon the importation of the spelter in question; although the plaintiff claimed it as belonging to him; *Held*, that the duties thus refunded belonged to the importer and not to the vendee of the article on which duties had been wrongfully charged; and that such vendee could not compel the defendant to pay the refunded duties to him.

*Held also*, that the court could not, from the alleged custom of trade at New-York, and from the fact that the sale was at *long price*, make an agreement for the vendor that the vendee should have the benefit of debenture upon a sale of goods which were by law free from duty; or an agreement that if the vendor should succeed in recovering back the amount wrongfully received by the collector, for duties, the purchaser should be entitled to the money thus recovered.

Distinction between a sale at *long price*, and a sale at *short price*, according to the usages of trade at New-York.

It is a reasonable presumption, that those who are dealing in articles of commerce, especially those who purchase by wholesale from the importers, are acquainted with the different names by which such articles are known to the commercial world.

THIS was an appeal, from a decree of the vice chancellor of the first circuit, overruling a demurrer to the complainant's bill. The case, as stated in the bill, was as follows:

In February, 1844, the defendant imported into New-York, from Hamburgh, a quantity of spelter in plates, upon which the collector claimed and received a duty of twenty per cent ad valorem; amounting to $565. This spelter was not a dutiable article under the act of August, 1842, being included in the class of articles that by the ninth section of that act were exempt from the payment of duties; not by the name of spelter, but by the name of tutenague, or teuteneque as it is spelt in the seventh subdivision of that section. Had it been a dutiable article it would have been entitled to debenture; and to a drawback of the whole amount of the duty, except two and a half per cent thereof; upon an exportation at any time within three years.

By the usages of trade at New-York, as the bill alleged

Moore v. Des Arts.

merchandise entitled to debenture is sold at two different prices, called *long price* and *short price*. The first entitles the vendor to have the goods exported by the vendee within the time allowed by law, so as to give the importer the benefit of the drawback, or the payment of an additional price, equal to the amount of the duties, in case the goods are not exported. The second, or *short price* entitles the first, or any subsequent vendee, to the benefit of the drawback, in case he exports the goods within the time and in the manner allowed by law to entitle the importer to receive such drawback at the custom house.

A few days after the importation of the spelter, by the defendant, and the payment, to the collector, of the twenty per cent duty claimed to be due thereon, the defendant, by his authorized agent, sold such spelter to the complainant at *long price*, and delivered the same to him. In September, 1844, while the spelter remained in the hands of the complainant, and in a situation in which it might have been exported with the benefit of drawback, had it been a dutiable article, the secretary of the treasury decided that this article was exempted from duty ; by the ninth section of the act of 1842. He thereupon authorized and directed the several collectors of the customs to refund to all importers of spelter, under that act, who had pai l duties thereon, the amount of the duties thus paid by them respectively. And in pursuance of that direction the defendant received back, from the collector, the twenty per cent duty which the latter had claimed and received from him upon the importation of the article in question ; although the complainant claimed the right to the return of such duty, and requested the defendant to authorize him to receive it.

The defendant having refused to pay over the amount thus received from the collector, the complainant filed his bill in this suit to recover the same. And the defendant demurred to the bill for want of equity ; and also stated, as a ground of demurrer, that if the complainant was entitled to the money, he had a right to recover it in an action at law.

*D. Lord,* for the appellant. The merchandize, spelter, was not in law dutiable, and so was not within the usage stated in the bill as to debenture goods. Both parties are to be deemed conusant with the commercial name of the article; and whether it was dutiable or not was a question of law merely. The parties contracting, with knowledge of the law and the fact, having been silent as to the sum which had been exacted as a duty, it is the vendor's money; and the vendee, without a contract for it, cannot claim it. A contract of sale merely, without any mistake of fact, or fraud, or any contract for the amount exacted, did not carry with it any obligation to refund any part of the supposed components of the cost of the goods.

Again; if the contract of sale, by its nature or the usage alleged, contains an agreement to refund any part of the cost, then the remedy is at law; there being neither trust, mistake, accident or fraud, and no ground of jurisdiction in this court for a discovery or an account.

*H. S. Dodge,* for the respondents. The demurrer was rightly overruled, and the order of the vice chancellor should be affirmed with costs. The case presented by the bill makes out a strong case in equity against the defendant. He has received money which in equity and good conscience belongs to the complainant; and he must be considered as holding it as a trustee for the latter. The complainant, by his purchase at the *long price,* paid the defendant the duties on the spelter and became entitled to the return of such duties if he exported the goods; or to obtain an equivalent for the duties by selling the spelter at the long or full price. The duties refunded by the government, without the exportation of the goods, belong to the complainant as his indemnity for the drawback which he has lost, and for the consequent fall in the market value of the goods. The complainant, by paying the *long price,* fully indemnified the defendant for the duties; and he is precisely in the situation, in equity, of an assignee of all the defendant's right to any return of or indemnity for the duties. His equity

Moore *v.* Des Arts.

is like and equal to that of the complainant in *Randal* v. *Cochran*, (1 *Ves. sen.* 98.)

The event of the return of the duties, by the secretary of the treasury, was not in contemplation of the parties, and was not an act that could have been compelled by law ; but rested entirely in his discretion. (*Laws U. S.* 1839, *p.* 68, § 2. *Cary* v. *Curtis, in S. C. U. S. Jan.* 1845.) It cannot therefore be urged that there has been a mistake of law. The court will not suffer the defendant to retain an unconscientious advantage from such an unforeseen event ; and directly contrary to the spirit and intent of the contract. (*Quick* v. *Stuyvesant,* 2 *Paige,* 84. *Chase* v. *Barrett,* 4 *Id.* 148.)

The remedy at law is doubtful. If there is any, it is the equitable action for money had and received—an action which assumes a concurrent remedy in equity. The established jurisdiction of this court is never lost because courts of law adopt its principles ; and extend a remedy to cases formerly only cognizable in equity, by allowing this action for money had and received. (*Fonbl. Eq. B.* 2, *ch.* 1, § 1. 2 *Story's Eq.* 501, §§ 1255, 1256. *Scott* v. *Surman, Willes' Rep.* 405. *Stratton* v. *Rastall,* 2 *Term Rep.* 366. *Pease* v. *Barber,* 3 *Caines' Rep.* 266. *Butler* v. *Wright,* 6 *Wend. Rep.* 290. *Wisner* v. *Bulkley,* 15 *Id.* 321. *Randal* v. *Cochran,* 1 *Ves. sen.* 98. *Weymouth* v. *Boyer,* 1 *Ves. jun.* 416. *Wright* v. *Hunter,* 5 *Id.* 792. *Kemp* v. *Pryor,* 7 *Id.* 237. *King* v. *Baldwin,* 17 *John. Rep.* 384. *Hawley* v. *Cramer,* 4 *Cowen's Rep.* 727. *McCrea* v. *Purmort,* 16 *Wend. Rep.* 460. *Varet* v. *N. Y. Ins. Co.,* 7 *Paige's Rep.* 561 ; *S C. in error, by the name of N. Y. Ins. Co.* v. *Rowlet,* 24. *Wend.* 505. *Welsh* v. *Fremont,* 4 *Bibb's Rep.* 343. *Wilkins* v. *Woodfin,* 5 *Munf. Rep.* 183.) Besides ; the discovery and account sought for by this bill would be sufficient to authorize the suit to be retained, if there were any doubt about the jurisdiction of the court. (*Weymouth* v. *Boyer,* 1 *Ves. jun.* 416. *N. Y. Ins. Co.* v. *Rowlet,* 24 *Wend.* 505.)

THE CHANCELLOR. It is not alleged in the bill in this case that the complainant, at the time of his purchase, was ignorant

of the fact that spelter, or zinc, or tutanag, or tutenague as it is sometimes spelt, was the same article that was exempted from duty, in the act of August, 1842, under the name of *teuteneque.* Nor does it appear that it was an article which was usually exported ; so that its value would have been materially increased from its being entitled to debenture.   Or that the complainant intended or expected to export it, or that he would have done so if it had in fact been entitled to drawback.   All that is said, in the bill, on that subject, is that at the time of the publication of the decision of the secretary of the treasury, the article remained in the complainant's hands, and in a situation to be identified &c. in the manner required by law to entitle the owner of debentured goods to the benefit of drawback, provided they are exported within the time limited by the statute.   I apprehend the only real injury which the complainant sustained by his ignorance of the law, was that he paid more for the spelter than it was actually worth.   And that by the subsequent decision of the secretary of the treasury while the article remained in his hands undisposed of, the value of spelter was reduced about twenty per cent in the market.

The article not being dutiable, the alleged custom as to the sale of articles entitled to debenture, at the *long price*, and the rights of the parties upon such a sale, has no application to this case.   For there is no allegation in the bill that the defendant represented that the spelter was a dutiable article, or that he had in fact paid duties thereon, or that the duties, if paid, had not been paid under protest.   It is impossible, therefore, out of the alleged custom and the mere fact that the sale was at long price, for this court to make an agreement for the defendant that the complainant shall have the benefit of debenture upon a sale of goods which are in fact free from duty ; or an agreement that if the vendor succeeds in recovering back the amount which has been improperly claimed and received by the collector, the purchaser shall be entitled to the money thus recovered.

It is a reasonable presumption that those who are dealing in articles of commerce, especially those who purchase by whole-sale from the importers, are acquainted with the different names

by which such articles are known to the commercial world. And if spelter was actually exempted from duty by the name used in the section of the statute relative to exempt articles, probably both parties to this sale had reason for believing that the claim made by the collector was unfounded; and that it would probably be reversed, and the duties be refunded to the importer. If so, the purchaser should have made his contract with reference to that event; so as to secure to himself the benefit of the refunded duty in case it should turn out that the collector was wrong. But he could not do this by simply purchasing according to a custom which had no application to such a case. On the other hand, if the term *teuteneque*, as used in the act of *August*, 1842, was wholly unknown to commercial men, and did not in fact designate the article imported by the defendant under the name of spelter, that fact should have been distinctly stated in the bill, *if the complainant wished to show that the receiving back of the duties had deprived him of a right of de-benture which actually existed, and to which he was entitled under his purchase of the spelter at long price.*

In any view, therefore, which I have been able to take of this subject, I do not see that the complainant is entitled to the refunded duties, which the defendant has received under the order of the secretary of the treasury. Hence, it is unnecessary to examine the objection made in the demurrer, that the remedy of the complainant, if he had any, was only properly cognizable in a court of law.

The order appealed from must be reversed; and the demurrer must be allowed, and the complainant's bill dismissed with costs. But under the circumstances of this case, I must leave each party to bear his own costs upon this appeal; except as to the costs of entering the final decree, and the subsequent proceedings thereon.